# UNITED STATES DISTRICT COURT
## FOR THE  SOUTHERN DISTRICT OF  TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| **M & T CONSULTING, LLC** §<br>§<br>**Plaintiff,** §<br>§<br>**-v-** §<br>§<br>**JHC TECHNOLOGY, INC.,** §<br>§<br>**Defendant.** §<br>§ | **Civil Action No. _____** |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, M & T Consulting, LLC ("Plaintiff" or "M&T"), by its undersigned attorneys, alleges as follows for its Original Complaint against Defendant, JHC Technology, Inc. ("Defendant" or "JHC"):

## THE PARTIES

1.     Plaintiff is, and at all relevant times has been, a corporation organized and existing under the laws of Texas, with a principal place of business located in Harris County, Texas.

2.     Defendant JHC is, and at all relevant times has  been, a corporation organized and existing under the laws of Maryland. Upon information and belief, Defendant's principal place of business is located at 401 Post Office Road, Suite 201, Waldorf, Maryland  20602.  Defendant may be served with summons through its registered agent, Joshua Dirsmith, at 148 Lakota Pass, Austin, Texas 78738 or wherever he may be found.

## JURISDICTION AND VENUE

3.     The Court has jurisdiction under 28 U.S.C. §§ 1332 because Plaintiff and Defendant reside in different states and the amount in controversy is greater than $75,000.

4.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 139l (b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in this judicial district, and because Plaintiff has its principal place of business within this judicial district and division.

## THE FACTS

5.     M&T has been certified as a minority subcontractor in the City of Houston's Minority Women Disadvantaged Business Enterprise ("MWDBE") Program since 2005. The company specializes in the technology sector and has worked with a number of prime contractors both as a re-seller and as the provider of technology support services.

6.     In 2018, JHC sought to enter into a professional services contract with the City of Houston involving Amazon Web Services and wished to engage minority subcontractors.  Due to her reputation and experience, JHC was advised to contact Marilyn Bankston Williams, the principal of M&T.

7.     It is widely known that it is very difficult to be granted a City of Houston contract without meeting minority participation goals. Furthermore, when an out-of-city or out-of-state company is bidding on a contract, having a local, well-connected minority subcontractor can be very beneficial.

8.     In October 2018, M&T and JHC executed a written contract (a copy of the contract is attached as Exhibit A; a fully executed copy shall be supplemented) whereby M&T promised to provide professional services for JHC's contract with the City of Houston. JHC induced M&T to enter into the contract by promising to pay M&T 12% of the overall contract, an estimated amount of $274,800. That allowed JHC to list M&T as a minority subcontractor

when submitting its bid for the multi-million dollar City of Houston contract, to qualify as a City of Houston contractor and to prevail in winning the contract.

9.      According to Mrs. Williams, when a prime contractor is awarded a contract by the City of Houston, the normal practice is to notify the minority subcontractors and to make plans going forward. JHC was awarded the City of Houston contract in November 2018. However, there was no attempt to contact M&T until July 2019, months after the fact. An email was sent to Marilyn Bankston Williams by a JHC representative on July 16, 2019 but she did not respond because she did not see the email when it was sent. Despite having all of Mrs. Williams's contact information, no other attempt was made by JHC to contact her or M&T.

10.     In March 2020, City of Houston personnel happened to mention to Mrs. Williams that she was listed as a minority subcontractor on JHC's contract with the City. She immediately reached out to JHC to find out what needed to be done for M&T to begin participating in the contract. She was told by JHC that they would seek to include M&T going forward but nothing ever materialized. To date, M&T has been paid nothing in connection with JHC's City of Houston contract while JHC has been paid in excess of two-million dollars and the contract is ongoing.

11.     When M&T met with JHC prior to filing suit, JHC represented that there simply had not been any work for minority subcontractors to perform on the contract. However, based on information and belief, the other minority subcontractor involved in the contract has been included and has been paid.

## CLAIM 1: FRAUD

12.     JHC represented to M&T that it would be paid 12% of JHC's overall contract with the City of Houston, thereby inducing M&T to enter into a legally enforceable contract with JHC and allowing JHC to name M&T as a minority subcontractor in its bid to the City of Houston.

13.     JHC's representation was material because it induced M&T to enter into the contract and that allowed JHC to represent to the City of Houston that it would be meeting its minority participation goals if awarded the contract.

14.     JHC's representation to M&T was a false promise of future performance. As would become clear later on, JHC had no intention of including M&T in the City of Houston contract and never intended to pay M&T 12% of the overall contract.

15.     JHC made the representation either knowing it was false or recklessly, as a positive assertion, and without knowledge of its truth.

16.     JHC intended for M&T to rely on the false representation and M&T did rely on it when it allowed JHC to list M&T as a minority subcontractor.

17.     JHC's false representation directly and proximately caused injury to M&T, which resulted in the following direct and special damages: the loss of 12% of JHC's professional services contract with the City of Houston. M&T therefore seeks unliquidated direct and special damages within the jurisdictional limits of this Court.

18.     Exemplary Damages. M&T's injury resulted from JHC's actual fraud or malice, which entitles M&T to exemplary damages under Texas Civil Practice & Remedies Code section 41.003(a).

## CLAIM 2: BREACH OF CONTRACT

19.     In the alternative, on or about October 12, 2018, JHC and M&T executed a valid and enforceable written contract. M&T attaches a copy of the contract as Exhibit A (a fully executed copy shall be supplemented) and incorporates it by reference. The contract called for M&T to provide professional services as a minority subcontractor for JHC's City of Houston contract and to be paid 12% of the overall contract.

20.     M&T was prevented from performing its contractual obligations by JHC. M&T

was not even informed JHC had been awarded the contract until months after the fact.

21.     JHC breached the contract by not paying M&T as a minority subcontractor.

22.     JHC's breach caused injury to M&T, resulting in the loss of 12% of JHC's overall contract with the City of Houston.

23.     M&T seeks unliquidated damages within the jurisdictional limits of this Court.

24.     <u>Attorney Fees.</u> M&T is entitled to recover reasonable attorney fees under Texas Civil Practice & Remedies Code chapter 38 because this is a suit for breach of a written contract. M&T retained counsel, who presented M&T's claim to JHC. JHC did not tender payment within 30 days of when the claim was presented. The notice letter is attached as Exhibit B.

## **PRAYER**

25.     For these reasons, M&T asks that the Court issue citation for JHC to appear and answer, and that M&T be awarded a judgment against JHC for the following:

a.  All actual special and direct damages.

b.  Exemplary Damages.

c.  Prejudgment and postjudgment interest.

d.  Costs of court.

e.  Attorney fees.

f.  All other relief to which M&T is entitled.

Respectfully submitted,

**BRAUN & GRESHAM PLLC**

__/s/Chris Bell_____
Chris Bell
Federal ID No. 15848
PO Box 1148
Dripping Springs, Texas 78620

T: 512-894-5426
F: 512-894-3405
*cbell@braungresham.com*

**ATTORNEY FOR PLAINTIFF**